Filed 03/04/24

VERMONT SUPERIOR COURT

Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-04057

Christopher White v. Nicholas Deml

## FINDINGS, CONCLUSIONS, AND JUDGMENT

This is an appeal under Rule 74 and 28 V.S.A. § 724 concerning Petitioner White's case staffing and the Department of Corrections' determination to revoke his eligibility for community supervised furlough for one year.[1]  The Court held a bench trial in this matter on February 29, 2024.  No new evidence was presented.  Both Petitioner and Respondent Department of Corrections offered arguments based on the administrative record.

In support of his appeal, Petitioner makes two arguments.  The first is that there is no evidence of harm to support a determination of a significant violation, and the interrupt should be seen as either an interrupt under Department of Corrections Policy 430.11(F)(2)(e) or (f).  Both of these grounds for an interrupt of furlough require an exhaustion of lower-level sanctions before the Department can impose the more severe sanction of interrupt.  *Miller v. State*, Docket No. 23-CV-03448 (Jan. 5, 2024) (Richardson, J.).

Petitioner's second argument, in the alternative, is that the Department failed to consider mitigating factors that would warrant a shorter interrupt.

The facts, based on the administrative record indicate that Petitioner White was convicted of sexual assault of his daughter who was a minor at the time.  As part of the conditions and terms of furlough, Petitioner had three relevant conditions regarding who he could associate with on furlough.  They were:

---

[1] At the start of the hearing, the parties noted that while Petitioner's furlough was originally revoked for two years, this determination was the result of a mistake in Petitioner's risk assessment.  The Department has corrected this mistake, and his interrupt period has been reduced down to one-year.

1. **SC20**: l will not associate with any person identified by my supervising officer as someone to whom I am an active risk;

2. **SC31B**: l will not allow any female passengers to ride in my vehicle, unless otherwise approved in advance; and

3. **SC36D**: l will not initiate or maintain contact with female persons under the age of 18 years unless otherwise approved in advance.

In June of 2023, Petitioner requested permission to have private contact with Sarah Daniels at his residence. This request was denied. In July 2023, Petitioner was warned not to have contact with Ms. Daniels any further and to cut off all contact immediately. In August of 2023, Petitioner's probation officer received information that the relationship with Ms. Daniels had continued. The information also indicated that Petitioner picked up Ms. Daniels in his car and would park away from Ms. Daniels' daughter's daycare so as not to be seen by anyone else. The information also indicates that Petitioner had regular contact with Ms. Daniels and Ms. Daniels' young daughter.

While there is no allegation of abuse or harm to either Ms. Daniels or her daughter, the evidence shows that Petitioner knowingly violated these three conditions and continued to violated these conditions despite notice and repeated warnings.

The Court finds that these conditions were created to keep Petitioner away from individuals with whom he runs a risk of re-offending, and that his blatant disregard for these three provisions and repeated violations constitute a significant violation as they represent a real and individualized risk against Ms. Daniels and her daughter. As such, the violations fall under Directive 430.11(f)(2)(b) and constitute grounds for the imposition of an interruption. As the Court has previously noted, the first four categories of significant violations do not require evidence of cumulative behavior and do not contain a requirement that the Department exhaust its lower-level technical sanctions. *Miller*, Dckt. No. 23-CV-3448, at 2.

Petitioner's argument that no one appeared to be at risk, and there are no allegations of harm do not address the primary issue of the condition. The Department made an initial determination that Petitioner's contact with certain individuals and categories of individuals (women under the age of 18) and certain activities (giving women rides in cars) posed a potential

risk and threat to those individuals.[2] The fact that Petitioner knowingly and repeated engaged in these behaviors demonstrates a risk to those individuals. To the extent that Petitioner objects and contends that he is not a risk, that argument goes to the existence of the condition and not to its violation. In other words, if the Department identifies a people at risk or behaviors that put others at risk and craft conditions that block those associations or behaviors, then violating these conditions is per se creating a threat of harm to individuals, if the violations involves specific and identifiable persons.

Based on this, the Court finds Petitioner's violations to be significant violations warranting the imposition of a furlough revocation.

The other issue raised in Petitioner's administrative record is that he left the state of Vermont despite a condition that he remain in the State of Vermont, unless he was given permission to leave. The evidence in the record shows that Petitioner did have a work permit to travel to New Hampshire to work, but that this permit had expired at the beginning of August 2023. The evidence also shows that Petitioner left the State with permission on or about August 22, 2023 and went to New Hampshire to visit with Ms. Daniels. Under Department of Correction Directive 430.11(F)(2)(d), another basis for a significant violation is absconding. As defined under 28 V.S.A. § 722, absconding includes when an offender leaves the State without authorization by the Department of Corrections.

Based on this violation, the Court finds that even if the Court had not determined that his repeated contacts with Ms. Daniels and her daughter were not significant violations, his absconding on August 22, 2023 would be sufficient to trigger and support a furlough interrupt. Therefore, the Court finds that there is no basis to disturb the Department's determination of significant violations and its resulting furlough interrupt, which are sustained.

---

[2] While there could be an argument that the first condition restricting contact with individuals not authorized by the Department is ambiguous as to whether its purposes is to protect those individuals or to protect Petitioner from individuals, there is no evidence in the record or from Petitioner that there were individuals posing a threat to him. Even if the Court did not consider that term, the remaining two terms—prohibiting from giving women rides in his car and from having contact with women under the age of 18 are plainly intended to protect those individuals from Petitioner as they correspond to Petitioner's previous actions that led to the harm giving rise to his incarceration.

This leads the Court to Petitioner's alternative argument regarding mitigation and furlough interrupt. Looking at the Department's furlough revocation criteria, under Directive 430.11, the decision-making process works as a series of choices and determinations that the Department must make when confronted with potential violations of the terms of the furlough. These include:

(1) Imposing revocation or graduated sanctions. 430.11(A).

(2) Determining if the violation constituted a significant violation. 430.11(F)(2).

(3) Determining if revocation is appropriate. 430.11(E)(2).

(4) Applying the proper revocation based on the sanctions grid. 430.11(G)(1).

(5) Applying aggravating or mitigating factors to change the sanction. 430.11(G)(3).

Petitioner's argument focuses on the fifth and last one of these decision points. Petitioner contends that in light of his participation in programming and his employment in the community, the Department should have reduced his furlough interrupt to reflect these positive aspects of his furlough and the potential that they represent for positive impacts on Petitioner and the community if he is returned to furlough more quickly. The application of mitigating factors is discretionary. The language of subsection (G)(3) states that the "Central Office Case Staffing Determination Committee **may consider** any aggravating or mitigating factors that could change the sanction selected." Vt. DOC Policy Dir. 430.11(G)(3) (emphasis added). Given that this Court's review looks to an abuse of discretion standard, the Court is fairly limited in how far it can examine an allegation concerning the lack of mitigation. 28 V.S.A. § 724(c)(1).

Looking further in subsection (G)(3), however, the policy guides that mitigation is even more limited. Under 430.11(G)(3)(c), the recommended mitigating factors do not focus on positive contributions an offender may have made while on furlough. Rather the focus is on factors that might reduce culpability and capacity to commit the violations. The factors look to diminished mental ability due to substance abuse or cognitive impairment, evidence of coercion or duress, or a history of compliance with the terms. None of these factors apply to Petitioner's case. While the Court does not, as a matter of law, rule that other mitigating factors are excluded or cannot form the basis for a reduction of time for the furlough interrupt, it does conclude that

the absence of such here is not an abuse of discretion. Therefore, the Court finds no basis to alter or overturn the furlough interrupt and determination reached by the Department in this case.

## **ORDER**

Based on the foregoing, Petitioner's appeal is denied, and the Department's furlough interrupt and case staffing, as modified by the Department, is affirmed. The Appeal is dismissed.

Electronically signed on 2/29/2024 7:28 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge


Electronically signed pursuant to V.R.E.F. 9(d)

_____
Merle L. Haskins
Assistant Superior Court Judge